1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANNETTE CUEVAS,

11            Plaintiff,                           No. 2:12-cv-00981 KJM KJN

12       v.

13   CHECK RESOLUTION SERVICES;
     and DOES 1 to 10, inclusive,
14

15            Defendants.                      FINDINGS AND RECOMMENDATIONS

16   _____/

17            Plaintiff filed a previous motion for default judgment (ECF No. 14), but the

18   undersigned denied it without prejudice for various reasons discussed on the record during a

19   hearing on March 7, 2013.  (Minutes, ECF No. 20.)  Presently before the court is plaintiff's

20   Renewed Motion for Default Judgment.[1]  (Mot. for Default J., ECF No. 23.)  The motion came

21   on for hearing on May 9, 2013.   Attorney Darren Shaw appeared telephonically on behalf of the

22   plaintiff.  No appearance was made on behalf of defendant.

23
              [1] This action proceeds before the undersigned pursuant to Eastern District of California
24   Local Rule 302(c)(19) and 28 U.S.C. § 636(b)(1).  Plaintiff moved for default judgment
     following an Order to Show Cause ("OSC") issued by United States District Judge Kimberly J.
25   Mueller, which required plaintiff to show cause why her case should not be dismissed pursuant to
     Federal Rule of Civil Procedure 41(b) for failure to apply for default judgment.  (OSC, ECF No.
26   11.)

                                                  1

1    The undersigned has fully considered the pleadings, briefs, and appropriate

2 portions of the record in this case and, for the reasons stated below, recommends that plaintiff's

3 Renewed Motion for Default Judgment be granted, and that plaintiff be awarded statutory

4 damages, attorneys' fees, and costs.

5 I.    BACKGROUND

6         A.    Allegations in the Complaint[2]

7              Plaintiff is an individual who resides in Sacramento, California.  (Compl., ECF

8 No. 1 ¶ 3.)  Plaintiff alleges that she is a consumer, that defendant is a debt collector "engaged in

9 the business of collecting debt in this state," and that defendant attempted to collect a debt from

10 plaintiff.  (Id. ¶¶ 3-5.)  Defendant allegedly placed "calls" to plaintiff regarding the alleged debt,

11 although plaintiff's pleading does not specify how many "calls" were made.  (Id. ¶ 6.)  Plaintiff

12 alleges that "[o]n or around December 9, 2011, Defendant called Plaintiff and informed Plaintiff

13 that there was a 'pending civil claim,' that Plaintiff should have social security information and

14 photo identification ready, and that Plaintiff has 'been notified.'"  (Id. ¶ 8.)  Plaintiff alleges that

15 given defendant's status as a debt collector and not an actual creditor, defendant "has no standing

16 to commence legal proceedings on behalf of the creditor."  (Id. ¶ 10.)  Plaintiff also alleges that

17 "[t]he representations made to Plaintiff by Defendant regarding the pending civil claim were

18 false."  (Id. ¶ 11.)

19              On April 13, 2012, plaintiff filed a complaint alleging that defendant had violated

20 the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., and California's

21 Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code §§ 1788 et seq.

22 (Compl. ¶¶ 15-20.)  In her first claim for relief, plaintiff alleges that defendant violated the

23 following provisions of the FDCPA: 15 U.S.C. §§ 1692d, 1692e, 1692e(5), 1692e(10), and

24 1692f.  (See Compl. ¶¶ 16a-16e.)  In connection with her FDCPA claims, plaintiff's complaint

25

26        [2]  The complaint contains only a cursory recitation of the operative facts and appears to be
a form complaint minimally tailored to the facts of this case.

2

1  prays for actual damages, statutory damages, costs, and attorneys' fees under the FDCPA.  (Id. ¶

2  20.)  Plaintiff's second claim for relief alleges that defendant violated the following provisions of

3  the Rosenthal Act in its attempts to collect the alleged debt: California Civil Code §§ 1788.17

4  (failing to comply with 15 U.S.C. §§ 1692 et seq.) and 1788.13(j) (falsely representing that a

5  legal proceeding has been or will be instituted unless payment of a consumer debt is made).  (See

6  Compl. ¶¶ 18a-18b.)  As to her Rosenthal Act claims, plaintiff's complaint prays for actual

7  damages, statutory damages, costs, and attorneys' fees under the Rosenthal Act.  (Id. ¶ 20.)

8                            B.      Facts Outside the Pleading

9              Plaintiff's renewed motion includes additional information intended to shed light

10  on the relatively cursory factual allegations within her pleading.  Plaintiff's moving papers

11  include several factual details that are absent from her pleading: that plaintiff's alleged debt was

12  to "Ritz Camera," that plaintiff's credit report represented that this debt was "closed" or

13  "[p]urchased by another lender" as of May 19, 2009, that defendant called plaintiff's cell phone

14  "on December 9, 2011 at 12:49 p.m." and "left a voicemail" wherein an individual named "Kim"

15  stated "that there was a 'pending civil claim' filed by Defendant against plaintiff," and that about

16  ten minutes later "Kim" also called plaintiff's home phone and again stated that "there was a

17  'pending civil claim' filed by Defendant against Plaintiff."  (Mot. for Default J. at 4-5.)  None of

18  these factual details were alleged in plaintiff's complaint.

19             While the undersigned acknowledges plaintiff's attempts to help explain the

20  alleged factual bases for her motion, however, only factual allegations *within the operative*

21  *pleading* can be considered in support of a motion for default judgment.  See, e.g., Cripps v. Life

22  Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) ("necessary *facts not contained in the*

23  *pleadings . . . are not established by default*.") (emphasis added).  Accordingly, the undersigned

24  has not considered any of plaintiff's newly-proffered factual allegations in analyzing the

25  sufficiency of the pleading's allegations to determine *liability* for default judgment purposes.

26  ////

                                            3

C.   Service of Process

Plaintiff's pending motion does not identify the provision of Federal Rule of Civil Procedure 4 under which plaintiff purports to have effectuated service of process upon defendant, a corporation.  (Mot. for Default J. at 3-4.)  However, it appears plaintiff attempted to effectuate service upon defendant in compliance with Federal Rule of Civil Procedure 4(h)(1)(B).[3]

Plaintiff filed a proof of service indicating that on September 5, 2012, plaintiff's process server completed personal service of the summons and complaint upon "Robert Marchiano, agent authorized to receive" at the following address: "312 Brookside Terrace, Tonawanda, New York, 14150."  (ECF No. 7 at 1; Mot. for Default J. at 3-4.)  The proof of service itself was dated September 12, 2012, and was signed by Rachel Winans, the individual who completed the service.  (ECF No. 7 at 1.)

Plaintiff also filed a second proof of service.  (ECF No. 7 at 2.)  The second proof of service states that, on September 6, 2012, plaintiff also effectuated service upon defendant by U.S. Mail.  (Id.)  In particular, the summons and complaint were mailed, first class, to defendant at "312 Brookside Terrace, Tonawanda, New York, 14150."  (Id.)  The proof of service itself was dated September 12, 2012, and was signed by Monica Figueroa, the individual who completed the mail service.  (Id.)

On October 16, 2012, following receipt of plaintiff's request for a clerk's entry of default (ECF No. 9), which was also mail-served upon defendant at the same "Brookside Terrace" address described above (ECF No. 9-3), the Clerk of this Court entered a certificate of entry of default against defendant.  (ECF No. 10.)  In entering default, the Clerk of Court stated

---

[3]  "Serving a Corporation, Partnership, or Association. Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served: [. . . ] *by delivering a copy of the summons and of the complaint to an officer, a managing or general agent*, [. . . ] and – if the agent is one authorized by statute and the statute so requires – *by also mailing a copy* of each to the defendant . . . ."  Fed. R. Civ. P. 4(h)(1)(B) (emphasis added).

1    that it appeared from the record and papers on file in the action that defendant had been duly

2    served with process, yet failed to appear, plead, or answer plaintiff's complaint within the time

3    allowed by law.  (ECF No. 10 at 1.)

4              On April 5, 2013, plaintiff filed a memorandum of points and authorities and her

5    attorney's declaration (Declaration of G. Thomas Martin III ("Martin Decl."), ECF No. 23-1) in

6    support of her Renewed Motion for Default Judgment.  Therein, plaintiff's attorney represented

7    that:

8              [p]ursuant to the New York State Department of State,
               Division of Corporations, Robert Marchiano is registered as
9              Defendant[']s Chief Executive Officer.  Also, pursuant to the
               New York State Department of State, Division of
10             Corporations, Defendant has no Registered Agent for Service
               of Process. Also, pursuant to the New York State Department
11             of State, Division of Corporations, Defendant's "Entity
               Address" is listed as 1555 Kenmore Ave., Kenmore, New
12             York, 14217 and Defendant's "Principal Executive Office" is
               listed as 1561 Kenmore, Kenmore, New York, 14223.
13

14   (Martin Decl. ¶ 4.)  Plaintiff served her moving papers and her attorney's declaration upon

15   defendant by mail at three separate addresses: "Check Resolution Services, Inc., 312 Brookside

16   Terrace, Tonawanda, NY 14150," "Check Resolution Services, Inc., 1561 Kenmore, Kenmore,

17   New York, 14223," and "Check Resolution Services, Inc., 1555 Kenmore Ave., Kenmore, New

18   York, 14217."  (Mot. for Default J., ECF No. 23 at 20 (Proof of Service).)

19             D.    Damages Sought

20             The Prayer for Relief in plaintiff's pleading includes requests for actual damages,

21   statutory damages pursuant to the FDCPA and the Rosenthal Act, and attorneys' fees and costs

22   under those statutes.  (Compl. at 6-7.)  However, plaintiff does not seek an award of actual

23   damages in connection with her pending motion, and she has not attempted to "prove up" any

24   actual damages.   Plaintiff seeks statutory damages, attorneys' fees, and costs in connection with

25   her pending motion.

26   ////

                                                    5

1    Plaintiff's Renewed Motion for Default Judgment seeks entry of judgment on

2    plaintiff's claims for violations of the FDCPA and the Rosenthal Act, as well as a total award of

3    $8,469.70, which consists of: (1) $2,000.00 in total statutory damages for violations of the

4    FDCPA and the Rosenthal Act; (2) $5,720.00 in attorneys' fees; and (3) $749.70 in costs.  (Mot.

5    for Default J. at 3.)  No response to plaintiff's renewed motion for default judgment is on record

6    in this action.

7    II.    LEGAL STANDARDS

8            Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a

9    party against whom a judgment for affirmative relief is sought who fails to plead or otherwise

10   defend against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not

11   automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans,

12   238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25

13   (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments).  Instead,

14   the decision to grant or deny an application for default judgment lies within the district court's

15   sound discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this

16   determination, the court may consider the following factors:

17              (1) the possibility of prejudice to the plaintiff, (2) the merits of
                plaintiff's substantive claim, (3) the sufficiency of the complaint,
18              (4) the sum of money at stake in the action[,] (5) the possibility of
                a dispute concerning material facts[,] (6) whether the default was
19              due to excusable neglect, and (7) the strong policy underlying the
                Federal Rules of Civil Procedure favoring decisions on the merits.
20

21   Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily

22   disfavored.  Id. at 1472.

23           As a general rule, once default is entered, well-pleaded factual allegations in the

24   operative complaint are taken as true, except for those allegations relating to damages.

25   TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing

26   Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair

6

1  Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Although well-pleaded

2  allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not

3  contained in the pleadings, and claims which are legally insufficient, are not established by

4  default."  Cripps, 980 F.2d at 1267 (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir.

5  1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is

6  not held to admit facts that are not well-pleaded or to admit conclusions of law") (citation and

7  quotation marks omitted); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004)

8  ("[A] default judgment may not be entered on a legally insufficient claim.").  A party's default

9  conclusively establishes that party's liability, although it does not establish the amount of

10  damages.  Geddes, 559 F.2d at 560; see also Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414

11  (9th Cir. 1990).

12  III.    ANALYSIS

13      A.      Appropriateness of the Entry of Default Judgment Under the Eitel Factors

14          1.      Factor One: Possibility of Prejudice to Plaintiff

15          The first Eitel factor considers whether the plaintiff would suffer prejudice if

16  default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of

17  entering default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, plaintiff would

18  potentially face prejudice if the court did not enter default judgment because absent entry of

19  default judgment, plaintiff would be without another recourse for recovery.  Accordingly, the

20  first Eitel factor favors the entry of default judgment.

21          2.      Factors Two and Three: the Merits of Plaintiff's Substantive Claims and
                     the Sufficiency of the Complaint
22

23          The undersigned considers the merits of plaintiff's substantive claims and the

24  sufficiency of the complaint together below because of the relatedness of the two inquiries.  The

25  undersigned also considers whether the well-pleaded allegations in the complaint, taken as true,

26  are sufficient to state a claim that supports the relief sought.  See Danning, 572 F.2d at 1388;

1    PepsiCo, Inc., 238 F. Supp. 2d at 1175.

2                    a.        The Alleged FDCPA Violations

3                    The FDCPA prohibits false or deceptive practices in connection with the

4    collection of debts.  15 U.S.C. § 1692.  The purpose of the FDCPA is to "eliminate abusive debt

5    collection practices by debt collectors, to insure that those debt collectors who refrain from using

6    abusive debt collection practices are not competitively disadvantaged, and to promote consistent

7    State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).

8                    The undersigned finds that the allegations in plaintiff's complaint, although

9    perfunctory, sufficiently support the grant of relief as to plaintiff's FDCPA claims for purposes of

10   plaintiff's Renewed Motion for Default Judgment.

11                          i.        *15 U.S.C. § 1692e*

12                   The first sentence of 15 U.S.C. § 1692e ("Section 1692e") provides that: "A debt

13   collector may not use any false, deceptive, or misleading representation or means in connection

14   with the collection of any debt."  15 U.S.C. § 1692e.  "Whether conduct violates [§ 1692e] . . .

15   requires an objective analysis that takes into account whether 'the least sophisticated debtor

16   would likely be misled by a communication.'"  Donohue v. Quick Collect, Inc., 592 F.3d 1027,

17   1030 (9th Cir. 2010) (quoting Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 934 (9th Cir.

18   2007) (internal quotation marks omitted)).  Only "material" misrepresentations are actionable.

19   Id. at 1034.

20                   Here, the few non-conclusory, factual allegations in plaintiff's complaint convey

21   that defendant made "calls" to plaintiff, that defendant told plaintiff a "civil claim" was pending

22   against her in connection with a debt, and that no such claim was actually pending such that

23   defendant's statements were "false."  (Compl. ¶¶ 8-11.)  These allegations, although perfunctory,

24   sufficiently support a claim under this provision, given that plaintiff has alleged a false

25   representation by a debt collector during phone calls made in connection with collecting a debt

26   from plaintiff.  See 15 U.S.C. § 1692e ("A *debt collector* may not use any *false*, deceptive, or

misleading *representation* or means *in connection with the collection of any debt*.") (emphasis added).  A false representation regarding a pending "civil claim" would likely materially mislead a debtor into believing that debt-related litigation was actually pending against her.  See Donohue, 592 F.3d at 1030.  Accordingly, plaintiff has sufficiently alleged a violation of Section 1692e for purposes of default judgment.[4]

     ii.  *15 U.S.C. § 1692d*

    Plaintiff also purports to seek default judgment as to her claim under 15 U.S.C. § 1692d ("Section 1692d").  Section 1692d provides that:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.
> (4) The advertisement for sale of any debt to coerce payment of the debt.
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

---

[4]  While plaintiff also argues that defendant's conduct violated several different subparts of Section1692e (Mot. for Default J. at 9), because the undersigned finds that plaintiff has adequately pleaded facts supporting a violation of the first sentence of this section, the undersigned does not address plaintiff's alternative arguments regarding violations of the section's subparts.

1    15 U.S.C. § 1692d.

2            Here, defendant allegedly made "calls" to plaintiff and falsely represented that a

3    "civil claim" was pending against her in connection with a debt. (Compl. ¶¶ 8-11.)  The pleaded

4    facts do not clearly support a claim under any of the enumerated subparts of Section 1692d: there

5    was no alleged threat of violence, no alleged use of profane language, no alleged publication of a

6    list, no alleged advertisement for sale of a debt, no alleged "repeated or continuous" calls with

7    "intent to annoy, abuse, or harass," and no alleged failure to disclose the caller's identity.  See 15

8    U.S.C. § 1692d(1)-(6).

9            However, plaintiff argues that "even though the conduct alleged in Plaintiff's

10   Complaint does not fall neatly within any of these specified categories, the illustrations of

11   prohibited conduct are intended to be inclusive, rather than exclusive."  (Mot. for Default J. at 7.)

12   Indeed, the first sentence of the above-quoted section generally prohibits "any conduct the natural

13   consequence of which is to harass, oppress, or abuse any person in connection with the collection

14   of a debt."  15 U.S.C. § 1692d.  The listed conduct is explicitly intended not to limit the "general

15   application" of the first sentence of the section.  Id.  The Ninth Circuit Court of Appeals has also

16   clarified that the statute's list of prohibited conduct is "a non-exhaustive list."  Fox v. Citicorp

17   Credit Servs., Inc., 15 F.3d 1507, 1516 (9th Cir. 1994).

18           The allegations in plaintiff's complaint, however perfunctory, sufficiently support

19   a claim under the first sentence of 15 U.S.C. § 1692d.  In other words, a debt collector's

20   allegedly making false statements about pending litigation during phone calls to a debtor could

21   rationally support a jury finding that such conduct had the "natural consequence" of "harass[ing],

22   oppress[ing], or abus[ing]" a debtor.  While plaintiff cites to Fox in support of this argument

23   (Mot. for Default J. at 7), the court in Fox did not find a potential violation of 15 U.S.C. § 1692d

24   based upon an allegedly *false representation* made to a consumer in connection with collecting a

25   debt.  See Fox, 15 F.3d at 1516-17.  Instead, the court in Fox found that alleged "intimidating

26   and threatening" phone calls made to the plaintiff's workplace — "an inconvenient time and

                                                    10

1   place" — could "rationally support" a jury finding of a violation of 15 U.S.C. § 1692d.  Id.

2   Nevertheless, given that the court in Fox has clarified that alleged conduct need not "fall neatly

3   within any of the[] specified examples" in Section1692d in order to properly state a claim, and

4   taking as true plaintiff's allegation that defendant falsely represented that a lawsuit was pending

5   against plaintiff, such false representation could rationally support a jury finding that the "natural

6   consequence" of defendant's false representation was to "harass, oppress, or abuse" the plaintiff.

7   See id.; 15 U.S.C. 1692d.  Accordingly, plaintiff has sufficiently alleged a violation of Section

8   1692d for purposes of default judgment.

9                           iii.     *15 U.S.C. § 1692f*

10          Plaintiff also argues that defendant's allegedly false representation regarding a

11  civil claim pending against plaintiff supports a claim for violation of 15 U.S.C. § 1692f ("Section

12  1692f").  (Mot. for Default J. at 9.)  The structure of Section 1692f is similar to the structure of

13  Section 1692d, discussed above, in that both begin by prohibiting a general category of conduct

14  continue by itemizing a non-exhaustive list of prohibited conduct.  Compare 15 U.S.C. § 1692f

15  with 15 U.S.C. § 1692d.  The first sentence of Section 1692f provides that "A debt collector may

16  not use unfair or unconscionable means to collect or attempt to collect any debt," and continues

17  with a list of specific examples of prohibited conduct.  15 U.S.C. § 1692f.

18          Plaintiff again analogizes to Fox and argues that defendant's allegedly false

19  representation regarding a pending civil claim amounts to an "unfair or unconscionable means"

20  of collecting a debt.  (Mot. for Default J. at 9 (citing Fox, 15 F.3d at 1516-17).)  The court in Fox

21  found a potential violation of Section 1692f where the defendant allegedly filed "an application

22  for a writ of garnishment when the [plaintiffs] were current in payments" because a "jury could

23  rationally find" that such conduct was "unfair or unconscionable" under that Section.  See Fox,

24  15 F.3d at 1517.  While the instant case does not involve improperly applying for a writ of

25  garnishment after satisfaction of a debt, it does involve a debt collector's allegedly false

26  representation about a pending debt-related civil claim.  (Compl. ¶ 8-11.)  Given that the Court of

11

1    Appeals has clarified that the alleged conduct need not necessarily "fall neatly within any of the[]

2    specified examples" delineated in the sections of the FDCPA, and taking as true plaintiff's

3    allegation that defendant falsely represented that a lawsuit was pending against plaintiff, a jury

4    could rationally find that such false representation amounts to an "unfair or unconscionable"

5    means of debt collection.  See Fox, 15 F.3d at 1517; 15 U.S.C. 1692f.  Accordingly, plaintiff has

6    sufficiently alleged a violation of Section 1692f for purposes of default judgment.

7                   b.       The Alleged Rosenthal Act Violations

8            The Rosenthal Act seeks to "prohibit debt collectors from engaging in unfair or

9    deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly

10   in entering into and honoring such debts."  Cal. Civ. Code. § 1788.1.

11           Plaintiff alleges that defendant violated California Civil Code § 1788.17 ("Section

12   1788.17") by "failing to comply with §§ 1692 et seq. of the FDCPA, as noted above."  (Compl. ¶

13   18b.)  Section 1788.17, which addresses compliance with federal regulations, requires that debt

14   collectors comply with Sections 1692b through 1692j of the FDCPA, with certain limitations not

15   relevant here.  Cal. Civ. Code § 1788.17.  Because plaintiff has sufficiently alleged violations of

16   the FDCPA as discussed above, plaintiff has sufficiently alleged a violation of California Civil

17   Code § 1788.17 for the purposes of plaintiff's pending motion for default judgment.

18           Plaintiff also alleges that defendant violated California Civil Code 1788.13(j)

19   ("Section 1788.13(j)").  Section 1788.13(j) provides that "[n]o debt collector shall collect or

20   attempt to collect a consumer debt by means of the following practices: [. . . ] [t]he false

21   representation that a legal proceeding has been, is about to be, or will be instituted unless

22   payment of a consumer debt is made."  Cal. Civ. Code § 1788.13(j).  Plaintiff alleges that

23   defendant violated this section "by using [the] false representation that a legal proceeding has

24   been, is about to be, or will be instituted unless payment of a consumer debt is made."  (Compl. ¶

25   18a.)  Again, albeit in a perfunctory fashion, plaintiff has alleged that defendant made a "false

26   representation" during a phone call to plaintiff, during which defendant stated that there was a

                                            12

"pending 'civil claim'" against plaintiff, that plaintiff should have "social security information and photo identification ready," and that plaintiff has "been notified," all of which were allegedly false statements designed to obtain payment of plaintiff's alleged debt.  (Compl. ¶¶ 8-11.) Accordingly, plaintiff has sufficiently pleaded a claim for violation of California Civil Code § 1788.13(j).

The undersigned concludes that the allegations in plaintiff's complaint, taken as true for the purpose of evaluating the pending motion for default judgment, justify entry of default judgment insofar as the merits and sufficiency of those allegations are concerned. Specifically, the undersigned concludes that plaintiff has sufficiently alleged that defendant violated Sections 1692d-f of the FDCPA, as well as Sections 1788.17 and 1788.13(j) of the Rosenthal Act.  Accordingly, the second and third Eitel factors favor the entry of default judgment as to these claims.

3.      Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003).  Here, plaintiff seeks a damage award of $8,469.70, which includes costs and fees.[5]  (Mot. for Default J. at 11.)  Under these circumstances, the undersigned concludes that this Eitel factor favors the entry of default judgment.

4.      Factor Five: The Possibility of a Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with factual allegations supporting her claims.  Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default

---

[5]  Whether plaintiff is entitled to an award of this size is a different issue, which the undersigned addresses in greater detail below.

1    and, thus, there is no likelihood that any genuine issue of material fact exists.[6]  <u>See, e.g.</u>, <u>Elektra</u>

2    <u>Entm't Group Inc. v. Crawford</u>, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations

3    in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there

4    is no likelihood that any genuine issue of material fact exists."); <u>accord</u> <u>Philip Morris USA, Inc.</u>,

5    219 F.R.D. at 500; <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177.

6                    5.      <u>Factor Six: Whether the Default Was Due to Excusable Neglect</u>

7                    Upon review of the record before the court, the undersigned finds that the default

8    was not the result of excusable neglect.  <u>See</u> <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177.  Plaintiff

9    personally served defendant's Chief Executive Officer with the summons and complaint and also

10   completed service of those documents by mail.  (Martin Decl. ¶ 4.)  Plaintiff also served

11   defendant by mail with notice of her pending motion, and in an abundance of caution sent copies

12   to three different potential addresses for defendant: the address originally used for service of the

13   summons and complaint, as well as the two addresses currently listed on the Division of

14   Corporations website.  (Mot. for Default J. at 20 (Proof of Service); Martin Decl. ¶ 4.)  Despite

15   ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendant has

16   not appeared in this action to date.  Thus, the record suggests that defendant has chosen not to

17   defend itself in this action, and not that the default resulted from any excusable neglect.

18   Accordingly, this <u>Eitel</u> factor favors the entry of a default judgment.

19                    6.      <u>Factor Seven: The Strong Policy Underlying the Federal Rules of Civil</u>
                             <u>Procedure Favoring Decisions on the Merits</u>
20

21                   "Cases should be decided upon their merits whenever reasonably possible."  <u>Eitel</u>,

22   782 F.2d at 1472.  However, district courts have concluded with regularity that this policy,

23   standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in

24   ────────────────────

25          [6]  Defendant's failure to file an answer or otherwise respond to plaintiff's complaint or
     pending motion further supports the conclusion that the possibility of a dispute as to material
26   facts is minimal.

                                                    14

1 an action. <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177; <u>see also</u> <u>Craigslist, Inc. v. Naturemarket, Inc.</u>,

2 694 F. Supp. 2d 1039, 1060-62 (N.D. Cal. 2010) ("As Defendants have failed to appear or

3 respond in this matter a decision on the merits is impossible.  Therefore, this factor favors entry

4 of default judgment.").   Accordingly, although the undersigned is cognizant of the policy

5 favoring decisions on the merits — and consistent with that policy would prefer that this case be

6 resolved on the merits — that policy does not, by itself, preclude entry of default judgment.

7       Upon consideration of the <u>Eitel</u> factors, the undersigned concludes that plaintiff is

8 entitled to the entry of default judgment against defendant.  What remains is the determination of

9 the amount of damages to which plaintiff is entitled, and such damages are discussed below.

10       B.   <u>Terms of the Judgment to be Entered</u>

11       After determining that a party is entitled to entry of default judgment, the court

12 must determine the terms of the judgment to be entered.  Plaintiff seeks a total award of

13 $8,469.70, which consists of: (1) $2,000.00 in total statutory damages for violations of the

14 FDCPA and the Rosenthal Act; (2) $5,720.00 in attorneys' fees; and (3) $749.70 in costs.  (Mot.

15 for Default J. at 3, 10-11.)

16       1.   <u>Statutory Damages</u>

17       Generally, the FDCPA provides that in a case brought by an individual plaintiff

18 seeking redress for a debt collector's failure to comply with the provisions of the statute, the

19 court may award:

20       (1) any actual damage sustained by such person as a result of such failure;

21       (2)(A) in the case of any action by an individual, such additional damages
as the court may allow, but not exceeding $1,000; . . . and

22

23       (3) in the case of any successful action to enforce the foregoing liability,
the costs of the action, together with a reasonable attorney's fee as
determined by the court . . . .

24

25

26

15

1  15 U.S.C. § 1692k(a)(1)-(3).[7]  In determining the amount of liability under section 1692k(a) in a

2  case involving an individual plaintiff, the court shall consider the following relevant factors: "the

3  frequency and persistence of noncompliance by the debt collector, the nature of such

4  noncompliance, and the extent to which such noncompliance was intentional."  15 U.S.C.

5  § 1692k(b)(1).  Statutory damages are available without proof of actual damages.  Baker v. G.C.

6  Servs. Corp., 677 F.2d 775, 781 (9th Cir. 1982).

7        The Rosenthal Act's damages provision generally tracks the FDCPA's, but the

8  provisions are not identical.  Under the Rosenthal Act, a debt collector who violates the statute

9  shall be liable to an individual plaintiff "in an amount equal to the sum of any actual damages

10  sustained by the debtor as a result of the violation."  Cal. Civ. Code § 1788.30(a).  The Rosenthal

11  Act further provides that a "debt collector who willfully and knowingly violates" the statute's

12  provisions shall face *additional* liability "for a penalty in such amount as the court may allow,

13  which shall not be less than one hundred dollars ($100) nor greater than one thousand dollars

14  ($1,000)."  Id. § 1788.30(b).[8]  In an enforcement action, "the prevailing party shall be entitled to

15  costs of the action" and, relevant here, reasonable attorneys' fees.  Id. § 1788.30(c).

16        Plaintiff requests the maximum statutory damages awardable under the FDCPA

17  and the Rosenthal Act, i.e., $1,000 for violation of the FDCPA and $1,000 for violation of the

18  Rosenthal Act.  (Mot. for Default J. at 3, 10-11.)  Defendant's violations of the FDCPA and

19  Rosenthal Act warrant an award of statutory damages, although not in the amounts plaintiff

20  seeks.

---

21

22     [7] Section 1692k(c) provides that "[a] debt collector may not be held liable in any action
   brought under this subchapter if the debt collector shows by a preponderance of evidence that the
   violation was not intentional and resulted from a bona fide error notwithstanding the

23  maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).
   This provision is not at issue here because defendant has not appeared in this action.

24

25     [8] A debt collector can avoid liability by showing "by a preponderance of evidence that
   the violation was not intentional and resulted notwithstanding the maintenance of procedures
   reasonably adapted to avoid any such violation."  Cal. Civ. Code § 1788.30(d).  This provision of

26  the Rosenthal Act is not implicated here in light of defendant's failure to appear in this action.

1    Plaintiff's briefing includes citations to various cases wherein courts have
2  awarded the maximum statutory damages for violations of the FDCPA and/or the Rosenthal Act,
3  but plaintiff does not meaningfully compare the facts of those cases to the facts alleged here.
4  (Mot. for Default J. at 13-17.)  Plaintiff argues that defendant "is a corporation, engaged in the
5  business of debt collection," such that defendant "is presumably cognizant of the operable
6  consumer protection laws as well as the repercussions" for violating those laws.  (Id. at 11, 13-
7  14.)  Plaintiff further urges that the misconduct she attributes to defendant is relatively "serious"
8  because it amounts to defendant's "making blatantly false representations," which plaintiff
9  implies is on the more extreme end of the spectrum of prohibited conduct.  (Id.)

10    In determining the amount of statutory damages to award under the FDCPA, the
11  court "shall consider" the following relevant factors: "the *frequency and persistence* of
12  noncompliance by the debt collector, the *nature* of such noncompliance, and the extent to which
13  such noncompliance was *intentional*."  15 U.S.C. § 1692k(b)(1) (emphasis added).

14    The patent falsity of the representation alleged in this particular case weighs in
15  favor of statutory damages under the FDCPA, but plaintiff has not compellingly shown
16  entitlement to an award approaching the maximum statutory damages allowed.  See 15 U.S.C.
17  § 1692k(b)(1).  The alleged misconduct in this case was not egregious in its alleged "frequency
18  and persistence" and did not involve large "call volume," as plaintiff's counsel admitted on the
19  record during the hearing.  Plaintiff's counsel argued instead during the hearing that the
20  particular "nature of [defendant's alleged] noncompliance" — the false statement that a civil
21  claim was pending against plaintiff — and the fact that it was allegedly "intentional" (Compl. ¶
22  19) weigh in favor of a maximum statutory damages award.  15 U.S.C. § 1692k(b)(1).  Plaintiff's
23  moving papers also argue that defendant is a corporation in the business of debt collection, such
24  that the "nature" of its alleged "intentional" conduct is particularly troubling.  (Mot. for Default
25  J. at 13-15.)
26  ////

1    However, while the undersigned finds that plaintiff's factual allegations suffice to

2    establish defendant's *liability* for default judgment purposes, plaintiff has not persuaded the

3    undersigned that the few facts alleged in this particular case warrant an award of the *maximum*

4    statutory damages allowable.  Plaintiff alleges defendant made a false representation in "calls"

5    occurring on just one day in December of 2011.  While defendant allegedly falsely mentioned a

6    "pending civil claim," it neither directly threatened plaintiff nor demanded immediate repayment

7    in exchange for dropping the civil claim.  Plaintiff's counsel argued during the hearing that

8    defendant's allegedly false representation regarding the pending civil claim amounted to a

9    "veiled threat" that an unsophisticated debtor would understand as a demand for immediate

10   repayment of the debt.  Be that as it may, plaintiff has not compellingly shown that what was at

11   most a "veiled threat" suffices for an award of *maximum* statutory damages under the FDCPA.

12   In determining the amount of statutory damages to award under the Rosenthal

13   Act, that statute provides that a "debt collector who *willfully and knowingly* violates" the

14   statute's provisions shall face additional liability "for a penalty in such amount as the court may

15   allow, which shall not be less than one hundred dollars ($100) nor greater than one thousand

16   dollars ($1,000)."  Cal. Civ. Code § 1788.30(b) (emphasis added).  Unlike the FDCPA's broader

17   statutory damages provision, which requires the court to examine the "nature" of the alleged

18   conduct and other factors, the Rosenthal Act's relevant provision permits a statutory damages

19   award only where a debt collector "willfully and knowingly violates" the Act.  Cal. Civ. Code §

20   1788.30(b) ("Section 1788.30(b)").  Here, plaintiff has alleged that defendant acted

21   "intentionally" in connection with the alleged misconduct.  (Compl. ¶ 19.)  In her moving papers,

22   plaintiff flags this allegation and argues that "[p]laintiff also has alleged that Defendant's conduct

23   was intentional and thus that its violations of the applicable statutes were willful."  (Mot. for

24   Default J. at 17.)  However, plaintiff has not identified any particular substantive factual

25   allegations or evidence that support characterizing defendant's misrepresentation as a "knowing"

26   and/or "willful" violation of the Act warranting the *maximum* allowable statutory damages.  See,

1  e.g., Jamal v. Thompson & Assocs., P.C., No. C-09-04249 MHP (BZ), 2010 WL 678925, at *4

2  (N.D. Cal. Feb. 25, 2010) (unpublished) (granting default judgment and awarding statutory

3  damages, but for less than the maximum amount, where plaintiff "provide[d] no evidence to

4  suggest that defendant's conduct warrant[ed] the maximum amount of damages" and where the

5  alleged "violation occurred only once and plaintiff provide[d] no evidence to suggest that such

6  noncompliance was intentional . . . .").  Plaintiff has not compellingly shown that, on the

7  particular facts of this case, defendant "knowingly" or "willfully" violated the Rosenthal Act in a

8  manner warranting a *maximum* statutory damages award.

9          Accordingly, the undersigned in his discretion recommends that plaintiff be

10  awarded $150.00 in statutory damages for violations of the FDCPA, and $100.00 in statutory

11  damages for defendant's violations of the Rosenthal Act.  15 U.S.C. § 1692k(b)(1); Cal. Civ.

12  Code § 1788.30(b).

13          2.      Reasonable Attorneys' Fees and Costs

14          Plaintiff seeks to recover her attorneys' fees.  (Mot. for Default J. at 17-18; Martin

15  Decl. at ¶¶ 9, 16-21.)  Plaintiff is entitled to seek attorney's fees and costs of litigation for

16  defendant's alleged violations of the FDCPA and the Rosenthal Act.  15 U.S.C. § 1692k(a)(3);

17  Cal. Civ. Code § 1788.30(c).

18          Plaintiff's counsel's declaration indicates that counsel spent "15.8 hours"

19  litigating this action at a rate of $325.00 per hour.  (Martin Decl. ¶¶ 17, 19.)  Plaintiff's counsel's

20  paralegal also spent "4.5 hours" working on this case at a rate of $130.00 per hour.  (Id. ¶¶ 18,

21  20.)  According to plaintiff's attorney, the total fees incurred in this action through April 5, 2013,

22  were "$5,720.00."  (Id. ¶ 21.)  Plaintiff's counsel also filed a copy of plaintiff's fee statement.

23  (Exh. D to Martin Decl.)

24          The Ninth Circuit Court of Appeals has held that district courts must use the

25  "lodestar method" to calculate reasonable attorneys' fees in cases such as this one.  Camacho v.

26  Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008) (citing Ferland v. Conrad Credit Corp.,

244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (per curiam)); see also Bankston v. PhyCom Corp., No.

C 07-03982 JF (PVT), 2008 WL 4412252, at *3 (N.D. Cal. Sept. 25, 2008) (unpublished) ("In

FDCPA and [Rosenthal Act] cases, courts use the lodestar method to calculate attorneys' fees.").

"The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably

expended on the litigation by a reasonable hourly rate." Camacho, 523 F.3d at 978 (citation

omitted).  The Court of Appeals has further held that "[a]lthough in most cases, the lodestar

figure is presumptively a reasonable fee award, the district court may, if circumstances warrant,

adjust the lodestar to account for other factors which are not subsumed within it."  Id. (citation

omitted).

The undersigned finds that, upon review of the supporting materials filed by

plaintiff, the hourly rates are reasonable.  However, the undersigned will recommend that the fee

award be reduced by $1,014 based on a 3.0 hour reduction of the time counsel expended to

prepare and file plaintiff's Renewed Motion for Default Judgment, and 0.3 hour reduction for

paralegal time expended in connection therewith.  (Exh. D. to Martin Decl. (billing entries dated

April 1 through April 5, 2013).)  Fairness dictates that fees not be awarded for time taken to

address and correct the avoidable deficiencies of plaintiff's previously-denied motion for default

judgment.  Accordingly, the undersigned recommends that plaintiff be awarded $4,706.00 in

fees.[9]

Plaintiff also seeks to recover costs pursuant to 15 U.S.C. § 1692k(a)(3) and

California Civil Code § 1788.30(c).  (Mot. for Default J. at 18.)  Plaintiff seeks costs in the

amount of $749.70, which consists of filing fees and the cost of serving defendant with process.

(Martin Decl. ¶ 22; Exh. D to Martin Decl. at 2.)  The undersigned finds that, upon review of the

supporting materials plaintiff filed, these costs are reasonable.  Accordingly, the undersigned

recommends that plaintiff be awarded $749.70 in costs pursuant to 15 U.S.C. § 1692k(a)(3) and

[9] ($5,720.00 − [(3.0 x $325) + (0.3 x $130)] = $4,706.00.)

1   California Civil Code § 1788.30(c).

2        3.   The "Doe" Defendants

3        The caption of plaintiff's complaint names "Does 1 to 10, inclusive," but there are

4   no factual allegations targeting any such Doe Defendants.  (Compl. at 1.)  Plaintiff never

5   amended her pleading to substitute any named defendants for any Doe Defendants.[10]  On the

6   record during the hearing, plaintiff's counsel consented to the dismissal of the Doe Defendants.[11]

7   Accordingly, the undersigned recommends that the Doe Defendants be dismissed from this

8   action *sua sponte* given the complaint's failure to state a claim against them and given plaintiff's

9   consent to such dismissal.

10   IV.   CONCLUSION

11        For the reasons stated above, IT IS HEREBY RECOMMENDED that:

12        1.   Plaintiff's Renewed Motion for Default Judgment (ECF No. 23) be

13   granted;

14        2.   Plaintiff be awarded $150.00 in statutory damages pursuant to 15 U.S.C. §

15   1692k(a)(2) and $100.00 in statutory damages pursuant to California Civil Code § 1788.30(b);

16        3.   Plaintiff be awarded $4,706.00 in attorneys' fees and $749.70 in costs

17   pursuant to 15 U.S.C. § 1692k(a)(3) and California Civil Code § 1788.30(c);

18        4.   The Doe Defendants be dismissed from this action *sua sponte* given the

19

20       [10]   Plaintiff did not request that default judgment be entered against any Doe Defendants.
Plaintiff has not served process on any Doe Defendants as required by Federal Rule of Civil
Procedure 4.  The Clerk of the Court has not entered default of any Doe Defendants pursuant to

21   Rule 55(a).

22       [11]   "The court has the authority to dismiss the Doe defendants *sua sponte*."  Staggs v.
Doctor's Hosp. of Manteca, Inc., No. 2:11–cv–00414–MCE–KJN, 2012 WL 5012268, at *10 n.7

23   (E.D. Cal. Oct. 17, 2012) (unpublished) (quoting Urias v. Quiroz, 895 F. Supp. 262, 264 (S.D.
Cal. 1995)).  A court should give notice of its *sua sponte* intention to dismiss Doe Defendants

24   where the pleading fails to state a claim against them.  See, e.g., id. at *10 n.7 (dismissing claim
against "Does 17-50" *sua sponte* but granting leave to amend claim) (citing Wong v. Bell, 642

25   F.2d 359, 361–62 (9th Cir. 1981) (a court must give notice of its *sua sponte* intention to invoke
Rule 12(b)(6) and afford plaintiffs an opportunity to at least submit a written memorandum in

26   opposition of such motion)).

1 | complaint's failure to state a claim against them and given plaintiff's consent to such dismissal.

2 |        5.      The Clerk of Court be directed to close this case.

3 |        These findings and recommendations are submitted to the United States District

4 | Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

5 | days after being served with these findings and recommendations, any party may file written

6 | objections with the court and serve a copy on all parties.  Such a document should be captioned

7 | "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

8 | within the specified time may waive the right to appeal the District Court's order.  <u>Turner v.</u>

9 | <u>Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir.

10 | 1991).

11 |        IT IS SO RECOMMENDED.

12 | DATED:  May 17, 2013

13 |

14 |

15 | KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

22